IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH OSIOMWAN
   *Petitioner*,

v.

UNITED STATES OF AMERICA
   *Respondent*.

Criminal Action No. ELH-12-0265
Related Civil Case No. ELH-16-663

## MEMORANDUM OPINION

Joseph Osiomwan, Petitioner, through post-conviction counsel, has filed a Motion to Vacate under 28 U.S.C. § 2255 (ECF 110, the "Petition"). He challenges the judgment entered on October 25, 2013, reflecting his convictions for conspiracy to distribute heroin and possession with intent to distribute heroin. ECF 83.[1] Petitioner claims that his trial counsel was ineffective for failing to move to suppress "evidence gleaned from the warrantless use of his cellular telephone tracking device . . . .", commonly called a "Stingray" or a "Cell-Site Simulator." ECF 110 at 4. The Petition is supported by an unredacted memorandum of law (ECF 118) and a redacted version (ECF 117).[2] The government opposes the Petition (ECF 124) and Petitioner has replied (ECF 130).

---

[1] This case was originally assigned to Judge William D. Quarles, Jr. It was reassigned to me on March 7, 2016, due to the retirement of Judge Quarles.

[2] Petitioner filed a redacted memorandum because it includes information for which the Court approved release to petitioner subject to certain restrictions regarding dissemination. The information released to petitioner, pursuant to this Court's Order, is docketed at ECF 66. *See also* ECF 116 (Order of March 25, 2016, granting release of sealed materials docketed at ECF 66).

In addition, petitioner has filed a "Motion For Leave To Take Discovery Pursuant To Rule 6 Of The Rules Governing Section 2255 Cases." ECF 119. In particular, he seeks to depose DEA Task Force Officer Brian Shutt, the lead investigator in the underlying criminal case.

While the Petition was pending, the Supreme Court granted certiorari in *United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016), *cert. granted*, 2017 WL 2407484 (June 5, 2017). *See* ECF 133. As a result, Petitioner submitted an unopposed motion to stay. ECF 134. By Order of June 26, 2017, I granted the Order and stayed this case pending the Supreme Court's decision in *Carpenter*. ECF 135.

On June 22, 2018, the Supreme Court issued its decision in *United States v. Carpenter*, ___ U.S. ___, 138 S. Ct. 2206 (2018). Thereafter, by Order of July 11, 2018, I lifted the stay. ECF 137.

Subsequently, Petitioner filed a supplement to his Petition. ECF 138. Similarly, the government filed a supplement to its opposition. ECF 139.

While I was working on this case, I determined that certain documents referenced by the government in its submissions may not have been submitted. *See* ECF 140. Accordingly, in an Order of October 26, 2018, I asked the government to supplement its submission. *Id.* The government complied on November 9, 2018. *See* ECF 142.

Under 28 U.S.C. § 2255(b), the post-conviction court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *United States v. LeMaster*, 403 F.3d 216, 220-23 (4th Cir. 2005); *see, e.g.*, *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Courts have determined that a hearing is not necessary where "the motion . . . fail[s] to allege sufficient facts or circumstances upon which the elements

of constitutionally deficient performance might properly be found [or] where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *accord United States v. McGill*, 11 F.3d 223, 225–26 (1st Cir. 1993). On the other hand, a hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve this issue." *United States v. Robertson*, 219 Fed. App'x 286, 286 (4th Cir. 2007); *see also United States v. Ray*, 547 Fed. App'x 343, 345 (4th Cir. 2013).

The issues here do not turn on credibility. I am satisfied that no hearing is necessary to resolve Osiomwan's claims. And, for the reasons that follow, I shall deny the Petition.

## I. Factual and Procedural Background

On May 15, 2012, Osiomwan was indicted on charges of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846 (Count One), and possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) (Count Two).[3] Defense counsel subsequently filed numerous motions on behalf of Osiomwan. These included the following: Motion To Suppress Wiretap Evidence (ECF 24); Motion To Compel Disclosure Of Existence And Substance Of Promise of Immunity, Leniency or Preferential Treatment (ECF 27); Motion For Disclosure Of Electronic Surveillance And to Compel Disclosure Of Audio And Visual Tape Recordings (ECF 28); Motion For Disclosure Of Informants And Witnesses (ECF 29); Motion For Disclosure Of Identity Of Informants (ECF 30); Request For Notice Of Intention To Use Evidence (ECF 31); Motion To Compel Production Of Communications Between Government And Law Enforcement Agents Prior To Execution Of

---

[3] Codefendant Larry Brown entered a plea of guilty to Count One on October 17, 2012. *See* ECF 46.

A Search Warrant And Arrest Of The Defendant (ECF 33); Motion To Suppress Evidence Resulting From Defendant's Arrest (ECF 34); Motion To Suppress Evidence Resulting From A Search Of Defendant's Residence (ECF 35); and two motions in limine. *See* ECF 35; ECF 36.

Judge Quarles heard the motions beginning on May 21, 2013, contemporaneous with a bench trial that he conducted that began on the same date. Pursuant to a Memorandum Opinion of May 22, 2013 (ECF 75), the motions were denied or, in some instances, denied as moot. *Id.* Judge Quarles subsequently found defendant guilty of a lesser included offense as to Count One and guilty as to Count Two. *See* ECF 76 (Memorandum Opinion); ECF 77 (Verdict).

The Presentence Report ("PSR") is docketed at ECF 82. Sentencing was held on October 23, 2013. ECF 80. The defendant's advisory sentencing guideline range called for a period of incarceration ranging from 97 to 121 months. *See* ECF 84. The Judgment of October 25, 2013 (ECF 83) reflects that the Court imposed concurrent sentences of 120 months' incarceration as to Count One and Count Two.

Thereafter, Petitioner noted an appeal. ECF 87. In a Judgment of December 5, 2014 (ECF 102), the United States Court of Appeals for the Fourth Circuit affirmed the convictions. The mandate issued on December 29, 2014. ECF 103.

About a year later, on December 16, 2015, the parties filed a consent motion to reduce sentence, pursuant to U.S.S.G. Amendment 782. ECF 106. By Order of December 18, 2015, Judge Quarles granted the consent motion and reduced petitioner's sentence to 97 months' incarceration. ECF 107.

The Petition followed on March 4, 2016.[4] During the post-conviction proceedings, the Court released sealed exhibits to Petitioner's counsel, which of course had previously been

---

[4] The government does not contend that the Petition was untimely.

disclosed to defense counsel at the relevant time. These exhibits had been filed by the government on May 13, 2013. *See* ECF 65 (Government's Motion To Seal); ECF 66-1 – ECF 66-6 (Sealed Exhibits); ECF 67 (Order Granting Motion To Seal).

Additional facts are included in the Discussion.

## II. Contentions

Despite the volume of motions filed by Petitioner's trial counsel, including a motion to suppress wiretap evidence, Petitioner contends that his defense counsel "failed to argue that a much more glaring Fourth Amendment violation had taken place—the warrantless use of a 'stingray'[] device to track Osiomwan and his co-defendant's movants—key evidence to help the Government build its case against Osiomwan." ECF 117 at 1; ECF 118 at 1. Petitioner states: *id.* at 2: "It was evident from the Government's response to Osiomwan's motion to suppress that a 'Stingray' had been used, although the word 'Stingray' was not referenced." *Id.* (citing ECF 66 at 7).

Petitioner also complains that the government "purported to rely on a 'court order' that permitted [the government] to obtain 'location information,'" but the "orders were granted based on misleading search warrant affidavits that did not identify, in all respects, the true manner and means of surveillance that the police sought to employ." ECF 117 at 2; ECF 118 at 2. Further, Petitioner asserts, *id.*: "At no time did police indicate in their affidavits that a warrant was sought for the use of a 'Stingray' or similar device." *Id.* In Petitioner's view, although law enforcement sought an order to obtain cell-site location information ("CSLI"), the request did not candidly describe the use of the cell-site simulator or Stingray. *Id.*

Critically, Petitioner maintains that the use of a cell-site simulator constitutes a search, and thus a warrant was required in order to comport with the Fourth Amendment. *Id.* at 5. He

5

explains that the warrant was necessary because "the device can precisely locate and track people's phones . . . ." and "cell-site simulators invade reasonable expectations of privacy." *Id.* And, he argues: "It is not dispositive that the government's affidavits submitted in support of the applications for search warrants states that the data would be obtained from Sprint or another carrier." *Id.* at 4 (citing *State v. Andrews*, 2016 WL 1254567 (Md. Ct. of Spec. App. March 30, 2016)).

According to Petitioner, the use of a cell site simulator "resembles" a "dragnet search and general warrant. . . ." *Id.* at 6. Therefore, its use must be "constrained by a warrant based on probable cause that mandates minimization . . . ." *Id.*i

Osiomwan contends that, but for the government's unlawful use of Stingray devices, the government "would have been unable to charge him with the offenses for which he stands convicted today." *Id.* at 6. Accordingly, he maintains that his trial counsel was ineffective for failing to seek suppression of evidence gleaned from the unlawful use of Stingray devices. *Id.*

The government vigorously disputes the use of a Stingray to track petitioner's movements. ECF 124 at 6. It states: "Nothing could be further from the truth . . . . At no time did the Government utilize a cell-site simulator to 'track' the Petitioner's movements." *Id.*

However, the government concedes that "a cell-site simulator was used in the investigation for the limited purpose of identifying other possible cellular phones used by the Petitioner.[]" ECF 124 at 7. It contends that the government obtained "location data" of Petitioner and others based upon requests submitted "in the various wiretap affidavits and upon specific findings by the district court and State circuit judges that such information were necessary to the overall investigation." *Id.*

On March 12, 2012, Peter Nothstein, then an Assistant United States Attorney

6

("AUSA"), filed an application to intercept a phone used by codefendant Larry Brown. It was supported by the Affidavit of DEA Task Force Officer Brian Shutt. ECF 66-1; ECF 142-5. The submissions concerned the target telephone, which was a cellular telephone used by codefendant Larry Brown. In paragraph 90 of the Affidavit (ECF 66-1 at 42), Shutt requested, under 18 U.S.C. §§ 2703(c) and (d), that the Court order the Service Provider to provide "originating and terminating cell-site location information, i.e., cell-site information concerning the physical location of antenna towers associated with the beginning and termination of calls to and from" the target telephone.

The matter was considered by U.S. District Judge James Bredar on March 12, 2012. Under 18 U.S.C. § 2703(d), the government was allowed access to such information through a probable cause warrant or a court order, so long as the government presented "specific and articulable facts showing that there are reasonable grounds to believe that . . . the records . . . are relevant and material to an ongoing criminal investigation." Judge Bredar issued the Order on the same date. ECF 142-4. That Order, under the Stored Communications Act, authorized the collection of cell-site information, pursuant to 18 U.S.C. §§ 2703(c)(1)(B), (c)(2), and J. *Id.* at 6.

On March 30, 2012, then AUSA Nothstein submitted to Judge Bredar an Application for an Order Authorizing The Interception of Communications (ECF 142-2), supported by an Affidavit, for Target Telephone 5, a mobile phone in the name of Deirdre Osiomwan and allegedly used by Joseph Osiomwan. ECF 142-2. It was supported by the Affidavit of Shutt. ECF 142-3; ECF 66-3. He averred grounds to support a belief "that cell-site location information is relevant and material" and, therefore, under 18 U.S.C. §§ 2703(c) and (d), he asked the Court to direct the Service Provider to provide "originating and terminating cell-site location information . . . ." *Id.* at 24, ¶ 53.

Judge Bredar signed the Order on the same date. ECF 142-1. Notably, the Order found "specific and articulable facts" that established "reasonable grounds to believe that GPS or cell site information will be relevant and material to an ongoing criminal investigation," and ordered, *inter alia*, that the Service Provider "provide originating and terminating GPS or cell site information" for the target phone. ECF 142-1 at 6.

On April 2, 2012, then AUSA Nothstein submitted an Application under 18 U.S.C. § 3122(a)(1) and § 3217(5), to Magistrate Judge Stephanie Gallagher (ECF 24-1), for the use of a pen register and a trap & trace device on mobile telephones believed to be used by Osiomwan, who was identified as the target. Judge Gallagher issued the Order on that date. ECF 24-2.

The government sought a continuation of the wire interception of Brown's telephone on April 12, 2012, which was submitted to Judge Bredar. ECF 66-2. Shutt averred, *inter alia*, that "the cell-site location information is relevant and material to this ongoing criminal investigation. Therefore, pursuant to 18 U.S.C. §§ 2703(c) and (d), the government requested that the Court's Order also direct the Service Provider . . . to provide . . . originating and terminating cell-site location information. . . ." for the target telephone. *Id.* at 28-29, ¶ 59.

On May 1, 2012, Task Force Officer Shutt submitted an Affidavit to Judge John Howard of the Circuit Court for Baltimore City, titled "Affidavit In Support Of Application For Authorization To Wire And Electronic Intercept Communications." *See* ECF 66-4. In the Affidavit, Shutt recounted, under oath, that on April 2, 2012, an application was submitted to Judge Stephanie Gallagher and received for a "'Trap and Trace' Device Order" . . . to assist in the identification of all cellular telephones being utilized by Joseph Osiomwan." ECF 66-4 at 32-33, ¶ 73.

The government sought a Search and Seizure warrant for Osiomwan's residence on May

3, 2012. *See* ECF 66-5 at 1, 17. It was approved by Judge Gallagher at 8:52 p.m. on that date. *Id.* at 1.

As noted, defense counsel moved to suppress the wiretap evidence. *See* ECF 4. The motion included location data that was sought in the application for interception. In a Memorandum Opinion of May 22, 2013 (ECF 75), Judge Quarles denied the motion to suppress wiretap evidence. *Id.* at 9-19. Judge Quarles did not specifically address the cell-site simulator. But, he upheld issuance of both the state and federal orders for interception of communications.

### III. Discussion

Pursuant to 28 U.S.C. § 2255(a), a prisoner in federal custody may "move the court which imposed the sentence to vacate, set aside or correct the sentence," but only on certain grounds: "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . ." *See also United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015).

Collateral attack is not a substitute for direct appeal; failure to raise certain issues on direct appeal may render them procedurally defaulted on post-conviction review. *United States v. Frady*, 456 U.S. 152, 165 (1982); *accord Bousely v. United States*, 523 U.S. 614, 630 (1998). As a general rule, a petitioner who fails to raise a claim on direct appeal is barred from raising the claim on collateral review. *Sanchez–Llamas v. Oregon*, 548 U.S. 331, 350–51 (2006). However, this bar generally does not apply to claims pertaining to ineffective assistance of counsel. *See, e.g.*, *Massaro v. United States*, 538 U.S. 500, 503–04 (2003).

Petitioner complains that his attorney was ineffective for failing to challenge the alleged use of cell site simulators, because their use was not authorized by a search warrant. However,

9

the use was authorized in court orders issued in 2012, pursuant to government submissions. For example, Judge Bredar authorized the government to obtain "Location Information," including "original and terminating GPS or cell site information." ECF 142-1.

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ____ U.S. ____, 137 S. Ct. 759, 775 (2017). Ineffective assistance of counsel is a well recognized basis for relief under 28 U.S.C. § 2255. *See generally Missouri v. Frye,* 566 U.S. 134 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010). To mount a successful challenge under 28 U.S.C. § 2255, based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984). *See Chaidez v. United States,* 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Lafler,* 566 U.S. at 162-63; *Hill v. Lockhart,* 474 U.S. 52 (1985); *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker,* 719 F.3d 313, 318 (4th Cir. 2013).

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must show that her attorney's performance fell "below an objective standard of reasonableness," measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). The burden is on the petitioner to establish "'that counsel made errors so serious that "counsel" was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Strickland*, 466 U.S. at 687).

As the Supreme Court reiterated in *Buck*, 137 S. Ct. at 775, the "first prong sets a high bar." *See also Powell*, 850 F.3d at 149. "The lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison,* 389 F.3d 450, 457 (4th Cir. 2004)).

"Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Harrington*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Indeed, "the *Strickland* standard must be applied with scrupulous care," *Harrington*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting Strickland, 466 U.S. at 690).

Second, the petitioner must show that his attorney's deficient performance "prejudiced" her defense. *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id.*

As the *Padilla* Court said, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." Accordingly, a petitioner is not entitled to post-conviction relief based on

11

prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id*. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). Failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

Here, the government obtained defendant's data under the Stored Communications Act, which allowed the government access to CSLI by a Court order. *See* 18 U.S.C. § 2703(d). Petitioner has not shown that he would have prevailed had defense counsel filed a motion challenging any Order in this case, on the basis that a probable cause warrant was required.

Petitioner relies on the recent case of *Carpenter v. United States*, ___ U.S. ___, 138 S. Ct. 2206 (2018), decided on June 22, 2018, to support his position. In *Carpenter*, the Supreme Court held that acquisition of cell-site location information constitutes a search under the Fourth Amendment. Therefore, the government must obtain a search warrant, supported by probable cause, to obtain use of such a device. *Id.* at 2217.

The *Carpenter* Court said, *id.* at 2217: "[W]e hold that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI [Cell-Site Location Information]." Moreover, the Court stated, *id.* at 2221:

> The Government acquired the cell-site records pursuant to a court order issued under the Stored Communications Act, which required the Government to show "reasonable grounds" for believing that the records were "relevant and material to an ongoing investigation." 18 U.S.C. § 2703(d). That showing falls well short of the probable cause required for a warrant. The Court usually requires "some quantum of individualized suspicion" before a search or seizure may take place. *United States v. Martinez-Fuerte*, 428 U.S. 543, 560-61, 96 S. Ct. 3074, 49 L.Ed.2d 1116 (1976). Under the standard in the Stored Communications Act, however, law enforcement need only show that the cell-site evidence might be pertinent to an ongoing investigation—a "gigantic" departure from the probable cause rule, as the Government explained below. App. 34. *Consequently, an order issued under Section 2703(d) of the Act is not a permissible mechanism for accessing historical cell-site records. Before compelling a wireless carrier to turn over a subscriber's CSLI, the Government's obligation is a familiar one—get a warrant.*

Notably, *Carpenter* was decided more than six years after the issuance of the court orders pertinent to this case. Moreover, as the government observes, there is an important distinction between the case *sub judice* and *Carpenter*. *See* ECF 139. In *Carpenter,* the Court was concerned with the government's "ability to obtain information regarding an individual's movements through historical call data maintained by cellular service providers for months, if not years . . . ." *Id.* at 1. In this case, however, the government obtained court orders for use of cell-site simulators to identify an unknown cellular telephone used by Osiomwan, rather than his location. *Id.* at 2. As a result, the government did not obtain CSLI. *Id.* Nor has Osiomwan shown any use of CSLI obtained without a warrant. Indeed, Petitioner has failed to identify any tracking information used by the government against him. Therefore, the government insists that the concerns expressed in *Carpenter* are not at issue here.

In any event, Petitioner's claim is unavailing. The facts here must be considered in context. At the relevant time in 2012, there would have been no basis to support the claim that Petitioner advances here. Even if defense counsel had submitted a motion akin to what Petitioner asserts was appropriate, he was not likely to succeed. Put another way, it is hard to

13

fault defense counsel for failing to raise the issue. In 2012, trial counsel was not ineffective for failing to predict the state of the law in 2018.

In *United States v. Leon*, 468 U.S. 897 (1984), and the companion case of *Massachusetts v. Sheppard*, 468 U.S. 981 (1984), the Supreme Court recognized a good faith exception to the exclusionary rule. In establishing the good faith exception to the exclusionary rule, *Leon* provided for the admissibility of evidence seized pursuant to a warrant subsequently determined to be invalid, if the executing officer's reliance on the warrant was "objectively reasonable." *Leon,* 468 U.S. at 922. *See also United States v. Thomas*, ___ F.3d ___, 2018 WL 5915965, at *4 (4th Cir. Nov. 8, 2018); *United States v. Chavez*, 894 F.3d 593, 608 (4th Cir. 2018); *United States v. Doyle,* 650 F.3d 460, 467 (4th Cir. 2011); *Herring v. United States*, 555 U.S. 135, 145 (2009); *United States v. Perez,* 393 F.3d 457, 461 (4th Cir. 2004). In other words, suppression is not available when "the police act with an objectively reasonable good-faith belief that their conduct is lawful." *United States v. Rush*, 808 F.3d 1007, 1010 (4th Cir. 2015).

The recent case of *United States v. Chavez*, 894 F.3d 593 (4th Cir. 2018), is particularly pertinent. There, the Court recounted that as recently as 2016, in *United States v. Graham*, 824 F.3d 421, 425 (4th Cir. 2016) (en banc), the Fourth Circuit held that "the government does not violate the Fourth Amendment when it obtains historical [cell site location information] from a service provider without a warrant." However, in *Carpenter*, the Supreme Court disagreed, concluding that the government's acquisition of cell site records is "a search within the meaning of the Fourth Amendment." 585 U.S. ___, ___, 138 S. Ct. 2206, 2220 (2018).

As the Fourth Circuit said in *Chavez*, 894 F.3d at 608, "*Carpenter* is obviously controlling going forward, [but] it can have no effect on Chavez's case." It recognized that the exclusionary rule's "sole purpose . . . is to deter future Fourth Amendment violations." *Davis v.*

*United States*, 564 U.S. 229, 236-37 (2011). The *Chavez* Court also said, 894 F.3d at 608: "Objectively reasonable good faith includes 'searches conducted in reasonable reliance on subsequently invalidated statutes.'" (Citation omitted). Further, the Fourth Circuit said, 894 F.3d at 608: "Chavez does not, and cannot, deny that investigators in this case reasonably relied on court orders and the Stored Communications Act in obtaining the cell site records. Without question, then, the good-faith exception to the exclusionary rule applies to investigators' actions here."

Relying on *Chavez*, a federal district court in Illinois recently concluded in a § 2255 matter that the defendant failed to demonstrate that a motion challenging CSLI evidence would have resulted in exclusion of the evidence, because the evidence was obtained before *Carpenter* was decided. *See United States v. Lewisbey*, 17 C8949, 2018 WL 4616361, at *2 (N.D. Ill. Sept. 26, 2018). When investigators "act with an objectively 'reasonable good-faith belief" that their conduct is lawful," the exclusionary rule will not apply. *Davis*, 564 U.S. at 238 (quoting *Leon*, 468 U.S. at 909).

At the time pertinent here – 2012 – that is precisely the situation. It follows that defense counsel was not ineffective merely because he was not clairvoyant.

In view of the foregoing, there is no need for discovery in this case. Therefore, I will deny ECF 119.

## IV. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words,

unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. at 773. Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

As indicated, a COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because Petitioner has not made a substantial showing of the denial of his constitutional rights, I decline to issue a COA.[5]

An Order follows.

Date: November 26, 2018 　　　　　/s/　　　　　　　　
　　　　　　　　　　　　　　　　　Ellen L. Hollander
　　　　　　　　　　　　　　　　　United States District Judge

---

[5] The denial of a COA by the district court does not preclude Petitioner from seeking a COA from the appellate court.